**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-11-0000133**
**27-JUL-2012**
**09:09 AM**

NO. CAAP-11-0000133

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


STATE OF HAWAI'I, Plaintiff-Appellee, v.
RODERICK BAGAOISAN, Defendant-Appellant


APPEAL FROM THE CIRCUIT COURT OF THE FIFTH CIRCUIT
(CR. NO. 08-1-0332)

SUMMARY DISPOSITION ORDER
(By: Foley, Presiding Judge, Leonard and Ginoza, JJ.)

Defendant-Appellant Roderick Bagaoisan (**Bagaoisan**) appeals from the Circuit Court of the Fifth Circuit's (**Circuit Court's**) January 10, 2011 Judgment/Guilty Conviction and Sentence/Notice of Entry (**Judgment**) for promoting a dangerous drug in the third degree.[1]

On December 30, 2008, Bagaoisan and co-defendant Robyn Dahle (**Dahle**) were each charged with (1) Promoting a Dangerous Drug in the Third Degree, in violation of Hawaii Revised Statutes (**HRS**) § 712-1243 (Supp. 2007) (**Count One**),[2] and (2) Unlawful Use of or Possession with Intent to Use Drug Paraphernalia, in

---

[1] The Honorable Randal G.B. Valenciano presided.

[2] HRS § 712-1243 provides, in relevant part:

> (1) A person commits the offense of promoting a dangerous drug in the third degree if the person knowingly possesses any dangerous drug in any amount.

violation of HRS § 329-43.5(a) (2010) (**Count Two**).[3] On July 14, 2010, following a jury trial, Bagaoisan was found guilty of Count One and not guilty of Count Two.

On appeal, Bagaoisan raises three points of error: (1) the verdict should be overturned based on insufficiency of the evidence; (2) the verdict as to Count One should be overturned based on inconsistent verdicts; and (3) the Circuit Court abused its discretion when it denied Bagaoisan's three motions for judgment of acquittal because the offense was *de minimis*.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Bagaoisan's appeal as follows:

Bagaoisan contends that the prosecution "failed to present sufficient evidence to convict as to each element of Promotion of a Dangerous Drug." The appellate court reviews the sufficiency of evidence on appeal as follows:

> [E]vidence adduced in the trial court must be considered in the strongest light for the prosecution when the appellate court passes on the legal sufficiency of such evidence to support a conviction; the same standard applies whether the case was before a judge or jury. The test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact.

State v. Richie, 88 Hawai'i 19, 33, 960 P.2d 1227, 1241 (1998) (quoting State v. Quitog, 85 Hawai'i 128, 145, 938 P.2d 559, 576 (1997)). "'Substantial evidence' as to every material element of the offense charged is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion." Richie, 88 Hawai'i at 33, 960

---

[3]     HRS § 329-43.5(a) provides:

(a) It is unlawful for any person to use, or to possess with intent to use, drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance in violation of this chapter[.]

P.2d at 1241 (citation omitted). Under such review, the appellate courts "give full play to the right of the fact finder to determine credibility, weigh the evidence, and draw justifiable inferences of fact." State v. Grace, 107 Hawai'i 133, 139, 111 P.3d 28, 34 (App. 2005) (citation omitted).

Under HRS § 712-1243, the State's burden at trial was to prove beyond a reasonable doubt that Bagaoisan "knowingly possess[ed] any dangerous drug in any amount." It is uncontroverted that methamphetamine is a Schedule II drug, and is therefore a "dangerous drug." See HRS § 712-1240 (Supp. 2011) & HRS § 329-16 (e)(2) (2010). The State presented uncontested evidence from Honolulu Police Department (HPD) criminalist Hillary Okamura that the substance found in the apparatus tested positive for the presence of methamphetamine and weighed 0.009 grams. Bagaoisan's challenge to the sufficiency of the evidence is whether he "possessed" the 0.009 grams of methamphetamine.

In this jurisdiction, possession can be either actual or constructive. State v. Moniz, 92 Hawai'i 472, 475, 992 P.2d 741, 744 (App. 1999) (citing State v. Mundell, 8 Haw. App. 610, 617, 822 P.2d 23, 27-28 (1991)). "A person who knowingly has direct physical control over a thing, at a given time, is then in actual possession of it." Mundell, 8 Haw. App. at 617, 822 P.2d at 27. Here, Bagaoisan was not in actual possession of the apparatus containing the methamphetamine at the time that the arrest warrant was executed on Dahle. Therefore, the State was required to prove at trial that Bagaoisan was in constructive possession of the apparatus.

"Constructive possession reflects the common sense notion that an individual may possess a controlled substance even though the substance is not on his or her person at the time of arrest." Moniz, 92 Hawai'i at 475, 992 P.2d at 744 (citations, internal quotation marks and brackets omitted). Constructive possession, therefore, "expands the scope of possession statutes

to encompass those cases where actual possession at the time of arrest cannot be shown but where the inference that there has been actual possession is strong." Id. at 476, 992 P.2d at 745 (citations, internal quotation marks and brackets omitted).

In Moniz, the defendant appealed from her conviction for promoting a detrimental drug in the third degree[4] and unlawful use of drug paraphernalia, claiming that there was insufficient evidence to support the conviction. 92 Hawai'i at 473, 992 P.2d at 742. Pursuant to a search warrant, HPD conducted a search of the residence Moniz shared with her husband. Id. at 474, 992 P.2d at 743. Moniz was present at the time of the search and remained seated on a couch throughout the duration of the search. Id. As a result of the search, the officers recovered items including a clear plastic bag containing 0.634 grams of marijuana and a plastic gram scale containing traces of a white substance subsequently determined to be 0.004 grams of methamphetamine. Id. Moniz's defense was that her husband, and not she, was responsible for the scale, marijuana, and methamphetamine residue found in their shared residence. Id. Moniz's husband accepted full responsibility for the marijuana, and testified that he used and sold drugs, and that it was his scale. Id. When asked if Moniz ever held or had possession of the scale, her husband responded, "No. Maybe I might have left it out. Maybe. I'm not too sure. Or, you know, she might have put it away." Id. at 474-75, 992 P.2d at 743-44. It was conceded that Moniz knew that there were drugs and paraphernalia in their apartment.[5] Id. at 475, 992 P.2d at 744.

---

[4] Like HRS § 712-1243 (Promoting a Dangerous Drug in the Third Degree), under HRS § 712-1249 (Promoting a Detrimental Drug in the Third Degree), the State is required to prove that the defendant "knowingly possess[ed] any marijuana . . . in any amount." HRS § 712-1249(1) (1993).

[5] Moniz testified that she was aware that her husband used drugs and that she "had seen the marijuana in [his] drawer." Moniz, 92 Hawai'i at 475, 992 P.2d at 744.

A jury found Moniz guilty of promoting a detrimental drug in the third degree (for the marijuana) and unlawful use of drug paraphernalia (for the scale). Id. In reviewing Moniz's conviction, this Court looked at whether there was substantial evidence to support a finding of constructive possession. Id. at 476, 922 P.2d at 745. We noted

> To support a finding of constructive possession the evidence must show a sufficient nexus between the accused and the drug to permit an inference that the accused had both the power and the intent to exercise dominion and control over the drug. Mere proximity is not enough.

Id. (internal quotation marks and citations omitted). Factors to consider in inferring a nexus between the accused and the drug, such that would permit an inference that the accused had constructive possession of the drug, include:

> (1) the defendant's ownership of or right to possession of the place where the controlled substance was found;
> (2) the defendant's sole access to the place where the controlled substance was found;
> (3) defendant under the influence of narcotics when arrested;
> (4) defendant's presence when the search warrant executed;
> (5) the defendant's sole occupancy of the place where the controlled substance was found at the time the contraband is discovered;
> (6) the location of the contraband;
> (7) contraband in plain view;
> (8) defendant's proximity to and the accessibility of the narcotic;
> (9) defendant's possession of other contraband when arrested;
> (10) defendant's incriminating statements when arrested;
> (11) defendant's attempted flight;
> (12) defendant's furtive gestures;
> (13) presence of odor of the contraband;
> (14) presence of other contraband or drug paraphernalia, not included in the charge;
> (15) place drugs found was enclosed.

Moniz, 92 Hawai'i at 476, 992 P.2d at 745 (format altered). Other factors have been deemed relevant such as, "the consistent presence of known narcotics users on the premises," "the large quantity of drugs found," "the presence of large sums of money," "the fact that the defendant had previously sold drugs," and "the fact that the drugs were found among the defendant's personal belongings." Id. (brackets and citations omitted).

While these factors are helpful in evaluating whether constructive possession exists, "they are far more difficult to apply in cases . . . where a defendant does not have exclusive possession or control of the place where drugs are found and no drugs are found on the defendant's actual person." Id. In recognizing the difficulty in evaluating constructive possession where a defendant does not have exclusive possession or control of the place where the drugs are found,

> it is necessary for the State to show facts that would permit a reasonable mind to conclude that the **defendant had the intent and capability to exercise control and dominion over the drugs**. That is, the evidence must raise a reasonable inference that the **defendant was engaged in a criminal enterprise and not simply a bystander**. Proof of the **defendant's knowledge of the presence of drugs and the defendant's ownership or right to possession of the place where the drugs were found, alone, are insufficient** to support a finding of the exercise of dominion and control. **Other incriminating circumstances must be present to buttress the inference of knowing possession and provide the necessary link between a defendant and illegal drugs**.

Moniz, 92 Hawai'i at 476-77, 992 P.2d at 745-46 (internal quotation marks, brackets and citations omitted) (emphasis added).

There was substantial evidence that Moniz had the *power* to exercise control and dominion over the marijuana because it was found in a drawer that she shared with her husband, and she was aware that the marijuana was there. Id. at 477, 992 P.2d at 746. Despite her *power* to exercise control and dominion over the marijuana, this court concluded that there was insufficient evidence in the record that Moniz had the necessary *intent* to exercise control and dominion over the marijuana. Id. The evidence against Moniz was that she (1) resided in the apartment where the marijuana was found, (2) was present when the search warrant was executed, (3) had knowledge of the presence of the marijuana in the drawer, and (4) had the power and capability of exercising control and dominion over the marijuana. Id. The court held that "[t]he foregoing evidence, standing alone, **does**

6

not support an inference that [Moniz] intended to exercise dominion and control over the marijuana." Id. (emphasis added).

In addition, Moniz and her husband both testified that Moniz strongly opposed her husband's use of drugs, did not procure the marijuana, and never smoked marijuana. Moniz, 92 Hawai'i at 477, 992 P.2d at 746. Further, when asked whether she could have taken the packet of marijuana from the drawer and thrown it away, Moniz replied: "No. I don't know because I just live over there. But if cannot find it, he going get mad. To him, that's his one. And I going throw away?" Id. The evidence further indicated that when the police arrived to execute the search warrant, Moniz let them in and sat on the couch while they conducted their search; she did not engage in any furtive or suspicious conduct or make any incriminating statements, but was cooperative with them throughout their search. Id. The amount of marijuana weighed less than a gram, and with the exception of the scale with a residue of methamphetamine, no other contraband was found in the apartment. Id. Based on this evidence, the court stated that "we cannot conclude that a nexus between [Moniz] and the marijuana can be inferred[,]" and therefore reversed the jury conviction and circuit court's judgment and sentence of Moniz for promoting a detrimental drug in the third degree. Id. at 477, 480, 992 P.2d at 746, 749.

Like in Moniz, Bagaoisan was not in actual physical possession of the methamphetamine when it was seized; therefore, the dispositive issue is whether substantial evidence was adduced at trial from which the jury could reasonably infer that he had constructive possession of it. Bagaoisan contends, inter alia, that there was no substantial evidence that (1) he had the intent to exercise dominion and control over the drugs, and (2) that he was engaged in a criminal enterprise and was not simply a bystander as to the co-defendant's possession of the apparatus and its contents.

In considering the evidence adduced at trial in the strongest light for the prosecution, it appears that there was substantial evidence to support the conclusion that Bagaoisan had knowledge of the glass beaker apparatus and its contents, that he shared the residence with Dahle, that he was present during the execution of the warrants on Dahle, and that the methamphetamine was found in close proximity to Bagaoisan. Both Vedena and Dahle testified that Bagaoisan lived at the Waha residence, kept his belongings at the residence, and stayed at the residence up to five times a week for a couple of months. This evidence is sufficient to support the conclusion that Bagaoisan had a right to possession of the Waha residence and shared the residence with Dahle. Officer Nesbit testified that Bagaoisan was found sleeping "less than two feet" from the apparatus and the methamphetamine. This evidence establishes Bagaoisan's proximity to the apparatus and its contents, and his presence during the execution of the warrants on Dahle when the apparatus was found. Lastly, Dahle's testimony establishes that Bagaoisan knew of the presence of the apparatus and the drugs in the residence. There was no additional evidence adduced at trial to prove that Bagaoisan "possessed" the methamphetamine.

Thus, there was substantial evidence that Bagaoisan resided in the apartment where the smoking apparatus containing the methamphetamine was found, he was present when the arrest warrant was executed, he had knowledge of the presence of the smoking apparatus and, by reasonable inference, that methamphetamine was contained inside the apparatus, and he had the power and capability of exercising control and dominion over the apparatus and methamphetamine.

This evidence is virtually indistinguishable from the type of evidence presented in Moniz. In Moniz, this court held that the evidence, standing alone, did not support an inference that Moniz intended to exercise dominion and control over the

drugs found in her residence. <u>Id.</u> Here, without any evidence from which to infer that Bagaoisan had the necessary intent to exercise control and dominion over the methamphetamine, we conclude that there is insufficient evidence that he had constructive possession over the methamphetamine.

The State maintains that <u>Moniz</u> is distinguishable because Bagaoisan was the closest person to the apparatus and it was less than two feet from his head when it was found, whereas Moniz was found in a completely different room from where the drugs were located. While proximity is a factor to consider in determining the sufficiency of the evidence, "[m]ere proximity is not enough" to support a finding of constructive possession. <u>Moniz</u>, 92 Hawai'i at 476, 992 P.2d at 745. The State's argument that Bagaoisan was "closest" to the methamphetamine does not make <u>Moniz</u> inapplicable to the instant case.

The State also argues that <u>Moniz</u> is distinguishable on the grounds that Moniz denied ever using drugs; whereas here, Bagaoisan did not. It is well-settled law that

> a defendant has a constitutional right *not* to take the stand, and a constitutional right to have the jury instructed that *no* adverse inferences are to be drawn from the fact that the defendant does not take the stand.

<u>State v. Sugiyama</u>, 71 Haw. 389, 391, 791 P.2d 1266, 1267 (1990). Bagaoisan's choice to exercise his constitutional right not to take the stand, and therefore his failure to testify regarding any past drug use, may not be used to draw an adverse inference that absent such a denial, he likely possessed the necessary intent to exercise dominion and control over the methamphetamine.

The instant case is similar to <u>Moniz</u> in other respects. Moniz "let [the police] in and sat on the couch while they conducted their search. She did not engage in any furtive or suspicious conduct or make any incriminating statements, but was cooperative with them throughout their search." <u>Moniz</u>, 92 Hawai'i at 477, 992 P.2d at 746. Here, the evidence adduced at

trial indicates that when police arrived to execute the warrants, Bagaoisan did not engage in any furtive or suspicious conduct to try to hide the apparatus, nor did he make any incriminating statements.

Also in Moniz, this Court noted that "the amount of marijuana found in the drawer weighed less than a gram, and with the exception of the scale with a residue of methamphetamine in its bowl, no other contraband was found in the apartment." Moniz, 92 Hawai'i at 477, 992 P.2d at 746. Here, Officer Nesbit testified that he "didn't find any other contraband in the house at that time[,]" nor did he find any other contraband on or near Bagaoisan when he woke Bagaoisan up. Although in Moniz the officers were executing a search warrant, whereas here the officers were executing an arrest warrant, there was no evidence adduced at trial to indicate that Bagaoisan was under the influence of narcotics at the time of the search or at the time he was arrested, he did not possess any contraband or paraphernalia at the time of the search or when he was arrested, nor was the apparatus and methamphetamine found amongst his personal belongings. See Moniz, 92 Hawai'i at 476, 992 P.2d 745 (providing these as factors to consider in determining the sufficiency of the evidence).

Finally, Moniz was asked whether she could have taken the packet of marijuana from the drawer and thrown it away. Moniz, 92 Hawai'i at 477, 992 P.2d at 746. Moniz responded "No. I don't know because I just live over there. But if cannot find it, he going get mad. To him, that's his one. And I going throw away?" Id. Although Moniz "had the power and capability of exercising control and dominion over the marijuana," there was no evidence to "support an inference that [Moniz] intended to exercise dominion and control over the marijuana.", because in her view, it was not hers to discard. Id. Here, Bagaoisan had previously told Dahle to "get rid" of the glass beaker apparatus

and its contents. By telling Dahle to get rid of the apparatus, it similarly appears that Bagaoisan did not have the intent to exercise dominion and control over the apparatus and its contents, although he had the power to do so, because it was not his to discard.

Based on the foregoing, even viewing the evidence in the light most favorable to the prosecution, no sufficient nexus between Bagaoisan and the methamphetamine exists such as to permit an inference that he had both the power and the intent to exercise dominion and control over the methamphetamine.

For these reasons, we conclude that there was insufficient evidence to support the jury's verdict that Bagaoisan knowingly possessed the methamphetamine. Accordingly, we need not discuss Bagaoisan's remaining points of error, which are without merit. The Circuit Court's January 10, 2011 Judgment is reversed.

DATED: Honolulu, Hawai'i, July 27, 2012

On the briefs:

Daniel G. Hempey
(Hempey & Meyers LLP)
for Defendant-Appellant

Tracy Murakami
Deputy Prosecuting Attorney
for Plaintiff-Appellee

Presiding Judge

Associate Judge

Associate Judge